**Douglas A. ABDELNOUR, Jr., Plaintiff,**

v.

**BASSETT CUSTOM BOATWORKS, INC., W. Dana Bassett, Ian O'Connell and J & J Marine Fabricating, Inc., Defendants.**

Civil Action No. 08–11226–NMG.

United States District Court, D. Massachusetts.

April 27, 2009.

Christopher F. Hemsey, The Law Office of Christopher F. Hemsey, P.C., Salem, MA, Stephen D. Judge, The Law Office of Stephen D. Judge, P.C., Lynn, MA, for Plaintiff.

Eugene J. McDonald, Law Firm of Eugene J. McDonald, Matawan, NJ, Curtis C. Pfunder, Boston, MA, Brian J. Wall, Troy Wall Associates, Sandwich, MA, for Defendants.

## MEMORANDUM & ORDER

GORTON, District Judge.

In this dispute over the construction of a commercial fishing boat, the plaintiff has moved this Court to remand the case to state court based on this Court's lack of admiralty (or any other subject matter) jurisdiction.

### I. *Background*

Plaintiff Douglas A. Abdelnour, Jr. ("Abdelnour") has filed a complaint against four defendants: 1) J & J Marine Fabricating, Inc. ("J & J"); 2) Bassett Custom Boatworks, Inc. ("Boatworks"); 3) W. Dana Bassett ("Bassett"), who is President, Treasurer and a Director of Boatworks; and 4) Ian O'Connell ("O'Connell"), who is Secretary and also a Director of Boatworks. Abdelnour alleges that in January, 2007, he entered into a contract with Boatworks for the construction and purchase of a 30–foot fishing boat (to be completed on or before July 15, 2007). Five months later, Boatworks entered into a sub-contract with J & J to build and install a conning tower on the boat.

When the boat was first delivered to Abdelnour on July 9, 2007, O'Connell allegedly acknowledged that its tower was improperly stabilized and that the decking contained cracks as a result. Because Bassett and O'Connell had no place to store the boat at that time, at their request, Abdelnour motored it to his mooring in Oak Bluffs, on Martha's Vineyard, Massachusetts. When Abdelnour reached Oak Bluffs, he claims he noticed that the cracks had increased in size and number. Since that time, the defendants allegedly made two unsuccessful attempts to repair the conning tower. In addition, Abdelnour alleges that the boat's engine malfunctioned on July 16, 2007, and has not yet been repaired.

On June 12, 2008, Abdelnour filed an eight-count complaint in the Massachusetts Superior Court for Barnstable County alleging: breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), damages sustained as a result of being a third party beneficiary (Count III), negligence (Counts IV–V), breach of express and implied warranties (Counts VI–VII) and violation of M.G.L. c. 93A (Count VIII). J & J later removed the case to this Court. Abdelnour has now moved to remand his case to state court based upon a lack of federal subject matter jurisdiction. The defendants have opposed that motion and Boatworks has moved to amend its answer to assert an additional cross-claim.

### II. *Legal Analysis*

#### A. Legal Standard

Federal district courts have subject matter jurisdiction over 1) cases "arising under the Constitution, laws, or treaties of the United States", 28 U.S.C. § 1331, 2) civil suits between diverse parties where the amount in controversy exceeds $75,000,

*Id.* § 1332, and 3) civil suits "of admiralty and maritime jurisdiction", *Id.* § 1333(1).[1]

■ Pursuant to 28 U.S.C. § 1447(c), a case must be remanded "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction". That statute must be strictly construed and any doubt concerning federal jurisdiction must be resolved in favor of state court jurisdiction. *Am. Bldg. Co. v. Varicon, Inc.*, 616 F.Supp. 641, 643 (D.Mass.1985). A motion to remand is decided by reference to the complaint at the time the petition for removal was filed. *Id.*

■ If a district court chooses to remand a case, it "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal". 28 U.S.C. § 1447(c). Such costs should not be awarded, however, when the removing party had an objectively reasonable basis for removal. *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 135, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005)

## B. Application

### 1. Timeliness

■ The defendants argue that Abdelnour's motion to remand should be denied as untimely because it was filed more than 30 days after the notice of removal. That argument must fail, however, because Abdelnour's motion would be barred only by the entry of a final judgment in this case, not the passage of 30 days. *See* 28 U.S.C. § 1447(c) (applying a 30-day deadline to file a motion to remand for any defect *except* lack of subject matter jurisdiction).

### 2. Subject Matter Jurisdiction

■ Subject matter jurisdiction in this case must rest on admiralty grounds because no federal question appears on the face of the complaint and all of the parties are citizens of Massachusetts, thereby precluding diversity jurisdiction. In support of his motion to remand, Abdelnour argues that this case involves only state law claims which emanate from the breach of a contract to build a commercial fishing boat and which, therefore, do not implicate admiralty jurisdiction. Indeed, it is well established that a contract for the construction of a vessel does not fall under admiralty jurisdiction, regardless of whether the construction is done before the hull is in the water. *Thames Towboat Co. v. The Francis McDonald*, 254 U.S. 242, 243–45, 41 S.Ct. 65, 65 L.Ed. 245 (1920).

■ In response to that assertion, the defendants point out that, in addition to breach of contract, this case also encompasses allegations of torts (such as negligence). Admiralty jurisdiction extends to torts when 1) the injury occurs or takes effect on navigable waters, 2) the "general character" of the activity giving rise to the tortious incident "shows a significant relationship to traditional maritime activity" and 3) the incident has a "potentially disruptive impact on maritime commerce".[2]

1. Admiralty claims do not constitute federal questions within the meaning of 28 U.S.C. § 1331. *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 367–67, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959), *rehearing denied*, 359 U.S. 962, 79 S.Ct. 795, 3 L.Ed.2d 769 (1959). Rather, 28 U.S.C. § 1333(1) confers original subject matter jurisdiction over admiralty cases on federal district courts. *Id.* That statutory conference is simply an adjunct to the United States Constitution, which extends federal judicial power "to all cases of admiralty and maritime jurisdiction". U.S. Const. Art. III, § 2.

2. The first element is known as the "situs" or "locality" requirement. The second and third

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 532–34, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995) (citations omitted). All three of those elements must be met to create admiralty jurisdiction over a tort. *Florio v. Olson*, 129 F.3d 678, 680 (1st Cir.1997).

### a. First *Grubart* Element

■ Courts from other circuits have held that the situs requirement is satisfied when negligent construction that occurred prior to the launching of a boat produces damages that manifest themselves while the boat is on navigable waters. *See, e.g., Mink v. Genmar Indus., Inc.*, 29 F.3d 1543, 1546 (11th Cir.1994); *Employers Ins. of Wausau v. Suwannee River Spa Lines, Inc.*, 866 F.2d 752, 759 n. 3 (5th Cir.1989). If that is so, whether the situs requirement is met here turns on when (or perhaps more appropriately, where) the cracks first appeared in Abdelnour's boat.[3] The claims against the defendants, as asserted in the complaint, originate from the alleged failure to "deliver" a boat that functioned in a "workman-like manner". Accordingly, the defendants committed a tort, if at all, by delivering a boat with cracked decking. If the cracks appeared while the boat was on navigable water, the situs requirement is met; otherwise it is not. The fact that the cracks may have become worse while the boat was on navigable water (en route to Oak Bluffs) is irrelevant to this discussion because the additional cracking does not constitute a separate actionable tort.

From the information available to the Court, the location of the boat when the cracks first appeared is not readily ascertainable. Abdelnour's complaint alleges that the boat was first delivered to him at Oyster Harbors, at which time its decking contained cracks. It is unclear whether the boat was delivered to him by truck or by sea. J & J asserts that the cracks "developed once the boat had been launched into navigable water" but its supporting affidavit does not identify whether the boat was on land or sea when the cracks first appeared. The affidavit merely states, in relevant part, that 1) the conning tower was installed while the boat was on land, 2) after installation was complete, the boat was inspected and no cracking was apparent, 3) the boat was returned to Bassett by water and 4) J & J later learned that cracks had appeared.

At the hearing held on the pending motion on March 25, 2009, the issue was not resolved. Counsel for Abdelnour argued that Abdelnour noticed cracking before the boat was launched into navigable water but counsel for the defendants responded that Abdelnour observed only "crasing" which is a normal and expected aftermath of the installation of a conning tower and not indicative of any defect. Counsel for the defendants contended that the problematic cracking developed while the boat was on navigable water.

Because any doubt on a motion to remand is resolved is favor of the non-removing party, the first *Grubart* element supports Abdelnour's motion to remand. *See Am. Bldg. Co.*, 616 F.Supp. at 643.

### b. Second *Grubart* Element

■ The second *Grubart* requirement is clearly met in this case because the mere operation of a boat on navigable waters has a substantial relationship with traditional maritime activity, *Foremost*, 457 U.S. at 675, 102 S.Ct. 2654, as does "the

---

elements are collectively part of a two-prong "nexus" or "connection" requirement.

**3.** The defendants address neither the situs requirement nor the malfunctioning of the engine, so the Court declines to do so as well.

proper design and manufacture of a vessel intended for use on navigable water", *Roane v. Greenwich Swim Comm.*, 330 F.Supp.2d 306, 314 (S.D.N.Y.2004).

### c. Third *Grubart* Element

■ A potentially disruptive impact upon maritime commerce exists when the subject incident poses "more than a fanciful risk to commercial shipping". *Grubart*, 513 U.S. at 539, 115 S.Ct. 1043. Following the Supreme Court's directive to describe an incident "at an intermediate level of possible generality", the alleged subject incident here is best described as the failure to build a boat with a properly stabilized conning tower and a functioning engine.

There is no allegation that the alleged defects in Abdelnour's boat pose any danger whatsoever. Unlike cases in which the Supreme Court has found the existence of a potentially disruptive impact, the defects at issue here could not affect, or interfere with, other vessels. *Cf. Sisson v. Ruby*, 497 U.S. 358, 363, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990) (fire aboard a boat tied to a dock may impact maritime commerce because fire could have spread to other boats); *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 675, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982) (collision of two pleasure boats may impact maritime commerce impliedly because the wreckage could have blocked the passage of other vessels).

Although, by a liberal stretch of the imagination, the defects in Abdelnour's boat could become so aggravated that it could become stranded in the middle of a shipping lane, based on the operative facts that possibility is too remote to signify. In addition, even though Abdelnour was planning to use his boat for commercial fishing, it was never actually put to that use and thus its absence from maritime commerce was inconsequential. *See Arch v. Trea-* *sure Chest Casino, L.L.C.*, 306 F.Supp.2d 640, 646 (E.D.La.2004) ("[A]n accident aboard a vessel no longer engaging in maritime commerce injuring a laborer no longer contributing to the marine economy does not even potentially disrupt maritime commerce."). Therefore, the third *Grubart* element is not met in this case (and admiralty jurisdiction is lacking) because neither the faulty construction of a conning tower nor the malfunctioning engine would have a potentially disruptive impact on maritime commerce.

### 3. Imperfect Removal

■ At the March 25, 2009 hearing, Abdelnour raised, for the first time, the argument that the case must be remanded because not all defendants joined in the removal. In cases involving multiple defendants, all defendants must consent to the removal in order to render it valid. *Chi., Rock Island, & Pac. Ry. Co. v. Martin*, 178 U.S. 245, 248, 20 S.Ct. 854, 44 L.Ed. 1055 (1900); *Garside v. Osco Drug, Inc.*, 702 F.Supp. 19, 21 (D.Mass.1988) (describing the principle as the "rule of unanimity" (citation omitted)). Here, only J & J consented to removal. Because Abdelnour raised that issue well over thirty days after the removal, however, he is now barred from asserting it as a ground for remand. *See* 28 U.S.C. § 1447(c).

### 4. Attorney's Fees and Costs

■ Abdelnour seeks an award of costs pursuant to 28 U.S.C. § 1447(c), contending that the lack of subject matter jurisdiction is "plain in law". Given the fact that some torts can, however, support a finding of admiralty jurisdiction, J & J had an objectively reasonable basis for removal and no costs will be imposed against it.

### ORDER

In accordance with the foregoing, Abdelnour's motion to remand (Docket No.

23) is, with respect to fees and costs, **DE-NIED** but is otherwise **ALLOWED.**

So ordered.